PEOPLE, *for use of* HIRTH, *v.* POWERS

| 108 | 339 |
|---|---|
| 108 | 490 |
| 108 | 339 |
| 112 | 607 |
| 108 | 339 |
| 115 | 46 |
| 108 | 339 |
| f 119 | 23 |

1. PUBLIC IMPROVEMENTS—BOND OF CONTRACTOR—MATERIAL MEN.
   The fact that curbstone are furnished to a paving contractor for a "lump sum," rather than for an agreed price per foot or yard, does not render the ¡person furnishing them a subcontractor, instead of a material man, thereby excluding him from the protection of the bond given by the contractor under 2 How. Stat. § 8411*b*, for the payment of all labor and material claims.

2. SAME—RELEASE OF SURETIES.
   The liability of the sureties on such a bond is not affected, as against the claim of a material man, by the fact that the latter has received payment for an antecedent indebtedness against the contractor out of funds realized by him under his contract.

Error to Kent; Adsit, J.   Submitted January 10, 1896. Decided February 18, 1896.

*Assumpsit* by the People of the State of Michigan, for the use and benefit of Anton Hirth and Fred H. Hirth, against John Powers, Abram B. Knowlson, and James McDermott, upon a statutory bond. From a judgment for plaintiffs, defendants bring error. Affirmed.

*Taylor & Eddy* (*Kingsley & Kleinhans*, of counsel), for appellants:

The payment of the antecedent debt to the plaintiffs constituted such a diversion of moneys earned under the improvement contract as to release the sureties, so far as plaintiffs' claim is concerned, or, at least, to reduce their liability to the extent of such payment. 2 Brandt, Sur. § 345; *Calvert* v. *London Dock Co.*, 2 Keen, 638; *Bragg* v. *Shain*, 49 Cal. 131; *Steam Navigation Co.* v. *Rolt*, 6 C. B. N. S. 550; *Tull* v. *Serrill*, 1 Wkly. Notes Cas. 373; *Taylor* v. *Jeter*, 23 Mo. 244; *Warre* v. *Calvert*, 7 Adol. & E. 143; *Barclay* v. *Deckerhoof*, 151 Pa. St. 374; *Fitzpatrick* v. *McAndrews*, 2 Pa. Dist. Rep. 713.

*Smiley, Smith & Stevens*, for appellees.

HOOKER, J.    The defendant Powers was a paving contractor, and the other defendants are his sureties upon a bond given in compliance with the statute (2 How. Stat. §§ 8411*b*, 8411*c*, and 3 How. Stat. § 8411*a*) to secure payment by the contractor and subcontractors for all labor performed and materials furnished upon a contract let to him by the city of Grand Rapids for the improvement of Valley avenue.    Hirth & Son were dealers in stone, and furnished the curbstone, and perhaps some stone for crossings, for this job, upon an agreement made by them with Powers soon after the contract was let by the city.    Previous to the time such agreement was made, Powers was indebted to Hirth in the sum of $300, for which Hirth had signed a note with Powers at bank, thereby receiving pay from the proceeds of the note.    This note had been renewed from time to time, and a renewal note was then outstanding.    It was paid by Powers giving Hirth an order for $300 upon his second estimate of work done under the Valley avenue contract, which Hirth presented to the city treasurer, whereby he obtained the money, and paid the note at bank.

Three questions are presented by counsel for the defendants, who have appealed from an adverse judgment:

1. That Hirth & Son were subcontractors, and therefore not within the protection of the bond.

2. That, if found to be within the provisions of the statute, the sureties were released from liability upon the Hirth claim by the application of $300 to an existing debt by the procurement of Hirth & Son.

3. That, if not released, the $300 should be applied in reduction of their claim.

The jury determined that Hirth & Son were material men, and not subcontractors, and the first question arises on the rulings of the court relating to the introduction of testimony upon the subject.    The defendants' counsel claim that they should have been permitted to show that the bargain for the stone was for a given quantity, and

for a "lump sum;" and the case of *Avery* v. *Supervisors of Ionia Co.*, 71 Mich. 538, is relied upon in support of the proposition that Hirth & Son were subcontractors, and not within the statute. *Staffon* v. *Lyon*, 104 Mich. 249, is also cited in support of defendants' claim. In the first of these cases, Avery made a written contract with the contractor of the Ionia county courthouse, whereby he agreed to deliver for a given price, fixed at $8,425, all the stone necessary for the building, to be cut and fitted in accordance with plans and specifications of the architect of the building, as fast as needed, and not to hinder or delay the workmen. He was to be paid on monthly estimates of stone furnished, to the extent of 90 per cent. of the contract price, and 10 per cent. on completion of the building. The plans and specifications were to be followed in cutting the stone, and they were made a part of the contract between the county and the original contractor, and were also made a part of the contract with Avery. The court held that Avery was a subcontractor, and not a material man merely, because he took his contract under the original contract, to be performed in accordance with the original contract, and presumably with knowledge of its terms and conditions, by which he was bound. Nothing was said in that case about the fact that he was to be paid a "lump sum," and its prominence in the case at bar cannot be justified by it. The defendants' contention must rest, therefore, upon the other case, where it was held that the plaintiff was a material man, and not a subcontractor. In the opinion Mr. Justice LONG points out the difference between the contracts in the two cases, among which he mentions the fact that the brick were furnished, "not for a lump sum, as under a contract, but at so much per thousand." The price was agreed upon in advance, and the plaintiff was to furnish all brick needed for the building; so that, if the defendants are right in their contention, it would seem that an agreement to furnish materials for a given sum would make the vendor a subcontractor, while, if he agreed to furnish them for an

agreed price per thousand, if they were brick, by load, if sand, or by barrel, if some other commodity, he would be a material man. We are unable to reach this conclusion. We think, in this case, as in *Staffon* v. *Lyon*, the vendor merely sold marketable material, used in the work of paving, and was in no sense a subcontractor. It therefore becomes unnecessary to discuss questions pertaining to evidence bearing upon the question of whether the stone was furnished for a lump sum.

The defendants' counsel cite a number of cases in support of the contention that the receipt by Hirth of $300 upon an antecedent debt was inequitable, and contend that the sum so received should be applied in reduction of the liability of the sureties, if it be not held to release them altogether as to the Hirth claim. These cases, for the most part, involve bonds given to the landowner as a protection against liens, and the sureties are held to be discharged by reason of payments advanced before they became due according to the terms of the respective contracts, upon the ground that such payments tended to remove inducements to perform the contract, which the withholding of such payments was calculated to offer. Counsel insist that there is an analogy between such cases and the present, because this bond is given for the benefit of the laborers and material men, as in those cases the bonds were given for the benefit of the landowners, and in this case the acceptance of the sum of $300, on an earlier debt, lessened the inducement to perform the condition of the bond, as in those cases the receipt and use of the money was likely to do. There seems to be, however, one difference. In the cases cited there was privity of contract between the sureties and the obligee, and the bond upon its face undertook that the contract should be performed. By accepting it, the obligee was in duty bound not to vary the contract in such way as to increase the liability of the sureties, whether by making new contracts, extending time of performance, or otherwise. In this case there is no actual privity of contract between

the Hirths and the sureties, unless the statute can be said to create one by requiring a bond, which is evidently intended for their benefit. They have undertaken nothing, and, unless we are to say that they could not extend the time of payment without releasing the sureties, we shall find difficulty in applying the rule of the cases cited. Again, to do so is to say that one who furnishes labor and material cannot receive payment for former labor or material furnished elsewhere, although the contract under which that sought to be recovered for was furnished, expressly provided for such payment. It assumes that the sureties have a right that the earnings of the contractor under his contract shall be applied upon the labor and material going into the building, when no such agreement is stated in the bond or provided by statute. If it were the law, it would seem to follow that a contract to build a house, or to render services as a subcontractor, in consideration of an existing indebtedness, could not be enforced against sureties who had signed a bond that the contractor or subcontractor should fulfill his contract. This bond did not, in terms, provide that the contractor should apply his earnings to pay the laborers or material men, and the statute does not provide for such a bond. It undertook that the contractor should perform his personal obligations in his own way. It contemplated that he would receive and disburse his money as should suit his convenience. This contention depends upon an alleged equity that the money earned shall be applied only upon the account for materials furnished for the particular job. It is not supported by the letter of the bond or statute, and we think it is not supported by authority.

The judgment is affirmed.

The other Justices concurred.